

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 21, 2025

**BY ECF**
The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Christopher Betances,* 24 Cr. 24 (LAP)

Dear Judge Preska:

    The Government respectfully submits this letter in advance of the May 28, 2025 sentencing in this matter. The Government respectfully requests that the Court impose a Guidelines sentence of 24 months' imprisonment, the statutory maximum.[1]

## I.    Background

### A.    The Underlying Offenses

    In about May 2008, law enforcement obtained information that the defendant and others intended to rob a residence in the Bronx, which they believed contained cocaine and $80,000. *United States v. Christopher Betances*, No. 08 Cr. 991 (LAP) (S.D.N.Y.), Presentence Investigation Report dated Feb. 11, 2009, ¶ 7 ("PSR I"). On or about May 14, 2008, agents conducted surveillance of the residence and observed the defendant and two other individuals approaching the victim's home. *Id.* ¶¶ 8-9. As the agents intervened, those men fled and, during the chase, the defendant tossed a firearm. *Id.* ¶¶ 10-11. For this conduct, the defendant pleaded guilty to a one-count Information, which charged him with conspiring to commit armed Hobbs Act robbery in violation of 18 U.S.C. § 1951. *Id.* ¶¶ 1-2. In about February 2009, this Court sentenced the defendant to 57 months' imprisonment and three years' supervised release. *United States v. Christopher Betances*, No. 08 Cr. 991 (LAP) (S.D.N.Y.), Dkt. 21.

    On or about January 16, 2013, the defendant commenced his term of supervised release in this

---

[1] The Probation Office recommends a term of 18 months' imprisonment.

District. Almost ten months into the defendant's term of supervised release, the Probation Office issued a Violation Report, charging the defendant with four specifications for allegedly: selling marijuana on or about September 13, 2013, in violation of New York Penal Law Section 221.10, Criminal Sale of Marijuana in the Fourth Degree; entering the kitchen area of a fast food restaurant and threatening to kill an employee on or about September 2, 2013, in violation of New York Penal Law Section 140.10, Criminal Trespass in the Third Degree; arguing with and placing his hands on the face of a restaurant worker during the same September 2, 2013 incident, in violation of New York Penal Law Section 240.26, Harassment in the Second Degree; and failing to report to the Probation Office as directed on or about October 19, 2013, in violation of a term of the conditions of his supervised release. On or about July 15, 2014, the defendant admitted the specifications, and sentencing was scheduled for January 22, 2015; however, the sentencing was adjourned so that the Probation Office could investigate additional criminal activity previously engaged in by the defendant.

After its investigation, on or about February 4, 2015, the Probation Office submitted an Amended Violation Report with an additional four specifications alleging that: (1) on or about August 16, 2024, the defendant slashed another individual in the head and body with a box cutter, in violation of New York Penal Law Section 120.05, Assault in the Second Degree; (2) on or about August 19, 2014, the defendant failed to notify the Probation Office about his arrest, in violation of a condition of the terms of his supervised release; (3) on or about November 4, 2014, the defendant violated New York Penal Law Section 265.01, Criminal Possession of a Weapon in the Fourth Degree; and (4) on or about November 4, 2014, the defendant, while in state custody, violated New York Penal Law Section 205.20, Promoting Prison Contraband in the Second Degree, for possessing a sharpened piece of metal with a pencil attached to it to serve as a handle. *United States v. Christopher Betances*, No. 18 Cr. 1016 (D. Ariz.), Presentence Investigation Report dated Oct. 23, 2019, ¶ 37 ("PSR II"). On or about February 18, 2015, the defendant admitted to these specifications. *United States v. Christopher Betances*, No. 08 Cr. 991 (LAP) (S.D.N.Y.), Dkt. 38. This Court sentenced the defendant to two years' imprisonment, consecutive to a state sentence which he was then serving, followed by two years' supervised release, concurrent to a state sentence of post-release supervision. *Id.*

In about November 2017, while in an Arizona federal facility serving the two-year sentence imposed on him by this Court in 2015, the defendant attacked another inmate. The defendant repeatedly stabbed that inmate with a piece of glass, which had a piece of string wrapped around it, functioning as a grip. PSR II, ¶ 7. The victim's medical records indicate that he suffered most of the stab wounds on his face, including a deep stab wound in an eye and cuts to the mouth, ear, and head. *Id.* ¶ 9. For this conduct, in August 2019, the defendant pleaded guilty to Assault with a Dangerous Weapon, in violation of 18 U.S.C. § 113(a)(3) and was sentenced to 57 months' imprisonment and three years' supervised release.[2] *United States v. Christopher Betances*, No. 18 Cr. 1016 Dkts. 34, 46 (D. Ariz.) (the "Arizona Action").

---

[2] This assault was not the defendant's fist incident in federal custody. Between 2008 and 2012, among other infractions, the defendant refused a work assignment, refused to obey orders, interfered with prison staff, entered an unauthorized area, and fought with another inmate. Ex. A.

### B. Relevant Disciplinary Record

After using the homemade weapon to repeatedly stab the inmate in the face in the Arizona prison, the defendant continued to engage in similar conduct while in federal custody. Specifically, on four separate occasions in 2018 and 2021, he received the following sanctions for possessing a dangerous weapon or a hazardous tool:

- May 2018: lost 41 days of good-conduct time, received disciplinary segregation for 10 days, and lost 4 months of commissary and visiting privileges;

- July 2018: lost 41 days of good-conduct time, received 10 days of disciplinary segregation, lost 8 days of non-vested good-conduct time, and lost 6 months of commissary privileges; and

- October 2021: lost 41 days of good-conduct time, received 30 days of disciplinary segregation, and lost 180 days of commissary, email, telephone, and visiting privileges for possessing a dangerous weapon, and lost 41 days of good-conduct time, received 30 days of disciplinary segregation (apparently concurrent to the previous disciplinary segregation), and lost 180 days of commissary, email, and visiting privileges for possessing a hazardous tool.

Inmate Discipline Data, Ex. A. Two months later, the defendant engaged in a melee with two other inmates and was thus sanctioned for that conduct; he lost 27 days of good-conduct time, received 15 days of disciplinary segregation, and lost 180 days of commissary, MP3, and telephone privileges. *Id.*

### C. The Violations of Supervised Release in the Instant Matter

On or about July 6, 2023, the defendant began serving the terms of his supervised release mandated by this Court and the Arizona Action for the 2015 and 2019 convictions discussed above, respectively. On or about January 12, 2024, less than seven months after the defendant had been on supervised release, the defendant was arrested for possessing a firearm in the Bronx. On or about January 16, 2024, Magistrate Judge Katharine H. Parker granted the Probation Office's request that the defendant's supervision by the District of Arizona be transferred to this District. *United States v. Christopher Betances*, No. 24 Cr. 24 (LAP) (S.D.N.Y.), Dkt. 1.

On or about January 23, 2024, the Probation Office issued a Violation Report arising out of the defendant's January 12, 2024 possession of a firearm. On or about January 30, 2024, this Court ordered the defendant detained, pending the resolution of the Violation Report. At the same time, the Bronx County District Attorney's Office began its prosecution of the defendant for his possession of the firearm (the "Bronx Action"). The defendant remained detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York and, to attend his Bronx proceedings, the defendant was periodically transferred from the MDC to the Bronx courthouse and returned to the MDC.

On or about September 17, 2024, the defendant was transferred to a Bronx courthouse for his state proceedings. After his appearance, he was transported to the courthouse at 500 Pearl Street before

his return to the MDC. While entering 500 Peal Street, the U.S. Marshalls uncovered that the defendant possessed, among other things, razor blades, narcotics, jewelry, cellphone chargers, and cellphones.[3]

As a result, on or about January 22, 2025, the Probation Office issued an Amended Violation Report. The Amended Violation Report charges the defendant with violating the conditions of his supervised release in six specifications. Five specifications arise out of the defendant's possession of the firearm on or about January 12, 2024: Specification One, Criminal Possession of a Weapon in the Second Degree, in violation of New York Penal Law Section 265.03 (Grade B violation); (2) Specification Two, Criminal Possession of a Weapon in the Third Degree, in violation of New York Penal Law Section 265.02 (Grade B violation); (3) Specification Three, Criminal Possession of a Firearm, in violation of New York Penal Law Section 265.01-b (Grade B violation); (4) Specification Four, Criminal Possession of a weapon in the Fourth Degree, in violation of New York Penal Law Section 265.01 (Grade C Violation); and (5) Specification Five, possessing a firearm in violation of the terms of his supervised release (Grade C violation). Specification Six is based on the defendant's possession of contraband on or about September 17, 2024, in violation of 18 U.S.C. § 1791, Providing or Possessing Contraband in Prison (Grade B violation).

The defendant has pleaded guilty in the Bronx Action. In this action, on or about March 31, 2025, the defendant admitted Specifications Two and Six, Criminal Possession of a Weapon in the Second Degree and Providing or Possessing Contraband in Prison, respectively. In the Bronx Action, the defendant pleaded guilty to Attempted Criminal Possession of a Weapon in the Third Degree, in violation of New York Penal Law Sections 110 and 265.02; he was sentenced to three years' imprisonment and five years' post-release supervision.

The statutory maximum in this case is two years' imprisonment for the independent reasons that the defendant: (1) was originally convicted of class C felonies in the Arizona Action and the 2008 action before this Court, 18 U.S.C. § 3583(e)(3), and (2) possessed a firearm in connection with the violation of his supervised release in the instant matter. *Id.* 3583(g). The Guidelines range for Specification Two would be 18 to 24 months' imprisonment. U.S.S.G. § 7B1.4(a). Specification Six has a Guidelines range of 7 to 13 months' imprisonment. *Id.*

II.   **Discussion**

The applicable 18 U.S.C. § 3553(a) factors warrant a Guidelines sentence of 24 months' imprisonment, consecutive to the sentence in the Bronx Action, to reflect the nature and circumstances of the defendant's conduct and the breach of the Court's trust, and to afford adequate general and specific deterrence.

   A.   **Applicable Law**

When imposing a sentence for a violation of the terms of supervised release, a court must consider certain factors set forth in § 3553(a), including the nature and circumstances of the offense,

---

[3] Two months later, the Bureau of Prisons stripped the defendant of his tablet privileges for 30 days for interfering with MDC staff. Ex. A.

the history and characteristics of the defendant, the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant, and the applicable Guidelines range. *See* 18 U.S.C. §§ 3553(a), 3583(e). In fashioning the appropriate sentence, the "primary goal" is "to sanction the violator for failing to abide by the conditions of the court-ordered supervision," to account for the breach of trust inherent in failing to follow the court-imposed conditions of supervised release. U.S.S.G. ch. 7, pt. A, introductory cmt. 3(b). Thus, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." *Id.*; *see United States v. Ramos*, 979 F.3d 994, 1002 (2d Cir. 2020). Pursuant to the Guidelines, a violation sentence shall be served consecutively to any other sentence the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation. U.S.S.G. § 7B1.3(f).

### B. A 24-Month Sentence Is Appropriate to Vindicate the Purposes of Sentencing.

*First*, general and specific deterrence in this case are substantial factors with respect to the defendant's possession of weapons while in custody. Here, the defendant, who previously stabbed another inmate in the face with a piece of glass, was caught, en route to the MDC, attempting to enter this courthouse with approximately twelve razor blades (photo below), among other contraband. The statutory maximum term of imprisonment is necessary in this case to send a distinct message that threats to the safety of the U.S. Marshals, those in the courthouse, and those at the MDC will not be tolerated.



It is clear that the defendant's previous terms of imprisonment, including for possessing prison contraband, have not deterred him from returning to the exact same conduct. This will be the defendant's third conviction for possessing contraband while in custody. These convictions are on top of the multiple sanctions the Bureau of Prisons has issued against him for possessing dangerous weapons or a hazardous tool. Ex. A. In addition, the defendant has demonstrated that none of his previous terms of imprisonment have deterred him from unlawfully carrying firearms. Accordingly, the maximum sentence will help send the message that repeatedly failing to abide by court orders,

disregarding the fundamental terms of supervised release, and breaching the Court's trust will result in a significant term of incarceration.

*Second*, the nature and circumstances of the instant offenses show a flagrant breach of the Court's trust. In July 2023, the defendant began serving the term of his supervised release; he was detained in this matter in January 2024. Eight months later, the defendant attempted to smuggle contraband through this courthouse to the MDC. This was not a case of a minor piece of contraband or a technical infraction of prison regulations. Instead, the defendant attempted to bring, among other things, the following contraband into the MDC: approximately 12 individually rapped razor blades (photo above), three cellphones, two cellphone chargers, jewelry, approximately 76 cigarettes, 137.292 grams of cannabis, 2.12 grams of methamphetamine, 0.049 grams of buprenorphine (a medication used to treat opioid use disorder), and 15 packets of rolling paper.



### III. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a consecutive Guidelines sentence of 24 months' imprisonment.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:   s/ Daniel Roque
Daniel K. Roque
Special Assistant United States Attorney
(212) 637-1946

cc:   Gary Kaufman, Esq. (by ECF)
U.S. Probation Officer Michael Estreicher (by email)